May it please the Court, Shiloh Hernandez, I represent Appellants, Montana Environmental Information Center, Earthworks, and Wild Earth Guardians, which I will refer to collectively as MEIC. With me at Council Table is Sarah McMillan. I intend to reserve five minutes for rebuttal. Very well. Just watch the clock, Counsel. Your Honors, this Court should hold that MEIC has standing and remand to the District Court for resolution of the merits. I would like to discuss three reasons, which I will briefly outline, why, contrary to the District Court's reasoning, the injury in fact to MEIC's members from the local impacts of oil and gas development are sufficient to support standing for MEIC's climate arguments. Counsel, do I understand correctly that you're no longer arguing standing based on global warming? Yeah, we're not arguing standing based on the GHG emissions from the challenge leases. We're not arguing that injury is from climate change caused by those emissions. I would be very much interested in the scope of your standing argument. To what extent do you claim standing and to what extent would you have to recognize that either the leases are so far away from the interests of your clients that they simply are beyond standing? So I don't want to, I'm just trying to help you focus the argument that would help us. If I understand your question correctly, Your Honor, we're basing standing on the geographical nexus between our clients' members' concrete interests and the location of the challenge leases. We have three members of our clients who regularly work, recreate, and visit locations on or adjacent to challenge leases. To some of the leases? To some of the leases, that's right. And to be clear, we're not challenging all of the leases as individual decisions. We're challenging the record decisions from six Montana field offices of the Bureau of Land Management, BLM, and the denial of our protest with respect to the lease sale at all six of them. So it's standing that we have to establish relative to those actions, not each individual lease. The record has evidence that our clients' members recreate on or adjacent to challenge leases. Just a minute. What are you saying? The standing should be assessed in terms of the field office that took the action or what? I don't understand your argument. Okay. The challenged agency action is the touchstone of the standing analysis. And the challenged agency actions here, there are actually a number of them. There are six decision records issuing lease sales from six field offices in Montana. And there's also a decision by the Bureau of Land Management rejecting our plaintiff's protest of all six lease sales. Both of those decisions. Now when you say there's six lease sales, now, does, do any of the leases involve more than one parcel? Or each sale limited to, you know, a single lease parcel? No. As I understand it, each lease sale involves a number of separate parcels. Now, how are they related? Just, they just come from the same field office? Or are they located, you know, together in a block or in some designated area or what? Is there any relationship between those? The relationship between them, Your Honor, is that it's the same agency actions, the same decision record that issued the leases. That, that's the agency action. So it could be leases in, say, say for instance, you know, could be, it could be six leases in four different counties in Montana. Is that what you're saying? Yes, that's right. And that would be all, it would all be approved by a single, by a single decision supported by the single ROD, is that? Yeah, the decision is called a decision record following a finding of no significant impact. And the leases are dispersed, but each within its particular field office area. Let me, let me, I just don't understand the field office argument. Let's just say there's a hundred lease parcels. And, you know, and they're divided up among six offices. So, you're saying for each office there's a decision, and under that is some number of parcels, right? Yeah, that's, that's right. But why would we make a decision based on the field office, which is, it's kind of like saying, you know, the Ninth Circuit was created in the 1800s, and so we have this geographic boundary, but we also are contiguous, say, in Yellowstone. So, you might have contiguous leases and you could have different or varying reasons on a lease that's contiguous to another lease but is in a different, quote, field office. That just seems like an artificial construct instead of saying, do you have standing or do your clients have standing for certain leases, regardless of which field office issued the decision? I think the analysis is cleanest, is the most clear, if we look at the specific agency action. And that's the decision record. I could maybe draw an analogy to a timber sale, for example. Often you have a single decision with a timber sale, and it involves a number of units that are scattered across an area of forest there. Some of them may be adjacent, but some of them aren't contiguous. There's one decision that approves that lease sale, and case law shows that that's a decision that can be challenged as a final agency action under the APA. There we're concerned with the location of the timber sale, not the location of the office which approved it, right? That's right. Here, similarly to that situation here, the leases are all within the contiguous area of individual field offices which have their specific area of jurisdiction. So that would be akin to the area of the timber sale. Another example would be a situation where you have a rule, and the plaintiff will challenge the rule for a forest plan, for example. And the plaintiff challenges it based on its specific application to one agency action. The court doesn't ask about every possible place that that rule has effect, but they just look at the specific geographical location, one specific location that affects plaintiff's concrete interests. I didn't analyze it your way, just to be honest, because it seemed artificial, and maybe I'll go back and look, but it seemed to me if I try to do it your way, then I have to go through these declarations and then match up the parcels or leases with a field office, right? But how do I do that? And I got to go to the ROD and match up your declarations with some field office as opposed to saying, okay, for example, Mr. Gilbert lists some number of leases that he believes he's given appropriate affiliation to in terms of his activities. It doesn't have anything to do with the geographic field office. So you're asking us to go back and match these all up then by field office?  I understand that, but that's not really how the evidence is organized. Mr. Gilbert and the other gentleman who had the nice pictures in his declaration, Mr. Wurzner. That's right. They didn't arrange them by field office, but they're all joined together in this one action, and the, I guess... Well, if we reject your field office approach, then what? I think then perhaps you look at each lease, but that's not the agency action. Under the APA, we can only seek judicial review of a final agency action, and the final agency action here, it's not the individual leases, but there are two, like I mentioned. The individual record decisions, that's the final agency action from each field office. Each field office issued a decision record. Well, if we go with the principle that the basis for standing that you're arguing now is valid, shouldn't all these questions for raising these decisions be made by the district court? In other words, district court passed only upon your standing under, I'll call it the greenhouse gas theory, right? That's all the district court ruled on. The district court... Where the leases are, the relationship, the leases to each other, under which record decision, which leases came, where your clients might use lease property, and how close the other leases were to it, things like that. That was never considered by the, never brought before the district court, was it? It was brought before the district court. That was our... The district court never ruled on that. The district court ruled... Did you have the theory, same theory, did you have the same theory with standing in the district court as you're asserting now? Absolutely. In fact, it was our primary argument. Our briefing from the district court wasn't included in the excerpts of record. However, in our docket entry at the appellate court, 31.2 and 31.3, those are our reply brief at the district court and our oral argument. In each of those, our primary standing argument was that we had standing based on the geographical nexus of our plaintiffs. All right. So you made that argument in addition to the greenhouse gas argument to the district court, but the district court ignored this first argument. It didn't rule on it. It seemed that it ruled as a matter of law in the court's ruling in footnote 19. The court seemed to say that because our claims all were generally associated with climate change, we had to establish standing based on the GHG emissions from these specific leases. We disagree with that, but the court seems to have reached that legal conclusion and as the basis of that, declined entirely to address the factual details of our analysis. So I guess what I thought the question was, and maybe I misheard it, was why wouldn't we just, if we disagreed with that construct, that it's only the climate change which you've now dropped, but instead it's the surface impact, why wouldn't we remand to the district court then to benchmark your evidence vis-a-vis that particular harm? There are three reasons for that, Your Honors. The first reason is that all of the evidence was presented to the district court. None of it was opposed by either the BLM or the interveners, the Petroleum Institute. It was undisputed. The court had the opportunity to address it, but didn't. It would be unfair for the court to remand it to the district court to allow BLM and the Petroleum Institute to retool their arguments. I guess your short answer is it's a legal question and we can decide it. No, it's a question of fact and law, but all the facts that were before the district court and would be before the district court are in the affidavits and are before this court, and this court has equal competency with respect to that question to resolve the issue. We can make fact findings? We don't need to. I mean, I beg to differ. The standing is a question of law. It is, but whether or not... It's obviously based on some facts, but they're apparently not disputed. Yeah, they're not disputed, and it's not uncommon for the court to resolve the issue of standing on appeal after it was denied at the district court. Judge McEwen, in your salmon spawning case, you did just that. The district court denied standing based on a legal, based on its analysis of the case. The case went on appeal. The court found no standing with respect to some claims, but then found standing with respect to one claim and remanded to the district court for resolution of the merits. There are numerous cases where the court has done just that. Well, counsel, I'm looking at the last sentence of footnote 19, which you pointed out to us. Plaintiffs do not assert claims based solely upon surface disturbance or on-the-ground activities associated with oil and gas development. What are we to do with that sentence? That seems to be the court's conclusion that we have to establish a nexus between our specific NEPA procedural theory and injury in fact, and that proposition has been widely rejected by numerous courts, Supreme Court and the Ninth Circuit, over the course of the past 40 years. First, in Sierra Club v. Morton in 1972, the court said, we're not going to require, once a plaintiff establishes injury in fact, they may raise any arguments on which the analysis was inadequate. The Supreme Court underscored this in the Duke Power case in 1979. There the court said, specifically, we're not going to require a nexus, a direct nexus, which is the basis for Article III standing, and the specific legal theory that the plaintiff has. What about redressability? Redressability. This is an important one. This is a procedural NEPA case, and with respect to redressability, all that is required is that on remand, the agency may make a different decision, and that the court may vacate the challenged agency action. Here, that would be the lease sales. The D.C. Circuit Court found that was the available remedy in a very closely analogous coal leasing case, with respect to climate change analysis. I think what you're saying is that that portion of the footnote 19 that Judge O'Scallion read may be an erroneous assertion of law, but the first part of that sentence, plaintiffs do not assert claims based solely upon surface disturbance or underground activities. Is that true or not true, that you assert or don't assert claims that are based solely upon surface disturbance? No, we don't have any claims based solely on surface disturbance. What are they based on? What are your claims based on? A combination? Yes, some are a combination. One, they're procedural NEPA claims, so it's difficult to really trace them. Our first is that the agency didn't consider adequate alternatives with respect to capturing methane emissions from the leases. The second is the agency didn't prepare an EIS, and the third is the agency didn't adequately assess the cumulative impacts of the surface disturbance of the challenged leases. Well, the challenge, actually, I don't know if that's, that's not an assertion of standing, is it? No, these are our merits arguments, and we don't, the case law is quite clear that we don't have to trace a nexus between our merits arguments and standing. You have to have some nexus, and I think that's what we're all searching for here. What are you relying on in terms of your sufficient nexus under Lujan, for example, to establish standing? Under Lujan, the court said in footnote seven, if you live next to a proposed dam, you may bring a procedural challenge to the NEPA analysis, even if you don't know when the dam is going to be built, and even if the dam never is ultimately built, even if you're, even if the dam ultimately is built, even if you succeed on your claims. So it was the geographical nexus that was important, and that's precisely what the coal mine development will affect your members' interest. That's enough for standing. The court specifically said that the pollutant that causes injury for standing need not be the pollutant that was inadequately analyzed under NEPA. I'm going to try to make sure I understand this, because I think the genesis of the district court's footnote that Judge O'Scanlan read was because you were asserting this climate change, greenhouse gas impact in the district court. And then I understand now that you're, I guess you're abandoning that. Is that accurate to say? We weren't asserting that as a claim. We raised a standing argument that we had, we could also trace injury from the greenhouse gas emissions. Right. We, that was our secondary standing argument. It was a backup argument. We didn't press it, an oral argument at district court, and we are not pressing it on appeal. So your argument on appeal is that these two gentlemen have established sufficient standing vis-a-vis potential surface injury? That's right. And do you need to tie that up with redressability? Because I know that maybe the intervener's brief says, well, you've indicated actually it's not necessarily terminating or stopping the leasing, but it might be criteria that would affect greenhouse gases, which is sort of back to the climate theory, as a remedy. How does that link up with the standing predicated on surface impacts? If I may answer and then reserve the small amount of my time remaining, the presumptive remedy in an APA case is to set aside the agency action. If the agency action is set aside, that will at least in part remedy our client's concerns, as this court recognized in the city of Sausalito case. The other point with regard to that is if the court says the agency erred, go back and do a more complete NEPA analysis, including an analysis of the surface impacts in the context of climate change, the agency may reach a different conclusion and not issue the leases. Judge Tashima, you had this analysis in your Tyler v. Cuomo case, which was also a NEPA case. It says that the court shouldn't presume what the outcome of the NEPA analysis is on remand. The fact that it may result in a different decision is sufficient for redress. Your Honors, if I may reserve the remainder of my time. You certainly may, Counsel. May it please the court, we will split the time, Counsel, for the government. Counsel, would you introduce yourself for the record, please? I'm William Mercer on behalf of Intervenors. And if I can have an allocation of 14 minutes and Counsel for the government will take the remainder. You control your own time, Counsel. We don't get in the middle of that. But your side is a total of 20 minutes. However you split it is fine. Thank you, Your Honor. I think the procedural posture is very significant and the history that has been discussed briefly by Counsel for the plaintiff is worth reiterating. And the excerpts of record that have been provided by the parties provide, I think, some of the answers that the court is seeking. At excerpts of record 302 through 342, we have the complaint that was filed in this case, and that is the genesis for the court's footnote 19. And if the court takes a look at that document, you'll see that there's an introductory section with seven paragraphs. Later, under the causes of action, there are a number of paragraphs that are back around 170. They begin at 159 and they go through 179. And as you read them, you will see the following types of language. In paragraph 2, failure to carefully address climate and energy concerns, fail to safeguard the climate, fail to address the waste of methane to the atmosphere caused by inefficient oil and gas operations. Paragraph 3 goes on and talks about how alternatives to abate greenhouse gas. Now I'm at 3, paragraph 3. What page of the record? 303. 303. All right. And so in that introductory section, you'll note that there isn't any discussion in those first seven paragraphs about what this case is about that discuss surface impacts and any sort of failure on behalf of BLM in assessing the implications of the final agency action with respect to surface impacts. Now at 147, which is on excerpts of record 336. So ER 336, starting at paragraph 147, are the three causes of action, claims for relief that have been set forth by the plaintiffs in this case. And once again, as you read those passages, you will find, for instance, in paragraph 155, excerpts of record 37, the BLM failed to consider reasonable alternatives to prevent or abate greenhouse gas pollution. 156 on excerpts of record 338 is BLM failed to consider reasonable alternatives to prevent or abate methane waste and inefficiencies. And I go through these passages, and I won't go through the whole document, but it is our representation that if you look at the introductory section and look at those paragraphs that set forth the claims for relief, you are going to see one consistent theme, and that is that the plaintiffs were attacking the environmental assessment that was done by BLM with respect to its ability to prevent and abate greenhouse gas emissions and the fact that it had not considered alternatives that petitioners had put forward at the agency level to say, you should consider these things as part of an EIS. And one of the major arguments that was made below in the scoping letter that was presented to the agency, and I will get page references before I sit down on the scoping letter, but the scoping letter that was initially sent, it looks like it's pages 199 through 2. Are you, Mr. Mercer, representing that that's exclusively the ground relied upon in the complaint? There's nothing in there about, I would say, on the ground concerns? What I'm representing, Your Honor, is that in this document that sets forth what the allegations are, all the claims for relief are focused on how do we abate greenhouse gases and reduce greenhouse gases and how the agency should need to undertake a more robust environmental assessment to ensure that greenhouse gases are abated. Now, assuming you're correct that that's the only kind of injury the complaint is about right now, in that kind of complaint or that kind of action, is it permissible then for the plaintiff to file a standing declaration that says, well, you know, I enjoy hiking on these lease areas and I enjoy the view? Is that contrary to the law in asserting standing on that basis when the only complaint you're making is about greenhouse gases? That is our argument, Your Honor. What case says that? Well, the Bellin case that this court decided in 2013 is a case that certainly stands for the proposition that you can't get standing to adjudicate general grievances about greenhouse gas emissions. We also talk about a case that these lawyers at Western Environmental Law Center brought in New Mexico. It's the Amigos Bravos case where they asserted that there were implications from BLM leases that were not adequately studied as part of an environmental assessment and that should have led to a more robust EIS. And the district court there said when you look at the infinitesimal amount, tiny, tiny, tiny amount of greenhouse gases, it doesn't have the impact in terms of causation or redressability or injury in fact that would allow a plaintiff to have standing in a case like this. But then that's not their point, and it's kind of an odd situation because the BLM disagrees with you, and the BLM says alleged injuries from the surface impacts were mentioned in the center's briefing and in its standing declarations but were a minor aspect, and they talk about the focus. And BLM didn't oppose standing on that ground. And so moving into the appellate process, they've basically abandoned the argument you're now trying to argue against. And so why? Maybe you could come back to what they are arguing, and that is why, as the BLM says, and as the center says, there is not a basis. You don't have to say whether it's correct or not, that they could challenge the surface impacts. And along that line, they agree with the D.C. Circuit, right? Right. And the district court cited a case that was reversed by the D.C. Circuit. They've cited a trial court case. I want to get back to redressability. That's a lot of questions. You can take them in any order that makes sense. I want to get to redressability at the end of that, but if I can just go through those excerpts of record, and I'm not going to read passages, I promise, but if you focus on what was alleged in the complaint and focus. It's not just the complaint. It's the briefing. I mean, it's the whole record below. So do you disagree that they put forth evidence in their briefing and also their affidavits having to do with surface effects? When you take a look at the totality of this record, I don't believe it can be fairly said. The answer to my question is did they put forth arguments in their declarations and their briefing on surface effects? Two declarants, we believe, made those allegations. Okay. But once again, this appeared, did not appear anywhere in terms of the causes of action that were set forth in this complaint or set forth at the agency level. What about the part of the complaint that talks about the parties? I haven't read them line by line in that level of detail, but it seems to me that these organizations that are referred to talk about their members who live in the area, enjoy these specific landscapes, and hunt, camp, photograph in the area. Isn't that enough? No, Your Honor. If it's supported by a declaration or affidavit, isn't that enough? It is not because it is not what they brought before the agency in terms of challenging the EA and saying this is inadequate, and it's not part of the pleading setting forth what was being litigated in this case. Everything that happened at the agency level and what happened in this pleading in the district court was to say that there should be an EIS, there should be a more thoughtful consideration of alternatives dealing with climate change and greenhouse gases. And so then, when the standing declarations were filed in order to try to establish standing, they were making an argument that all of a sudden there is an injury that bears no resemblance to what the litigation is about. So the argument is there should be more technology to reduce. Doesn't that really go to the merits? We're talking about standing at this point, and it seems to me that perhaps these two declarants may be enough to establish standing. Now, that doesn't mean they're entitled to a judgment, but at least it gets them in the door, does it not? It doesn't because of this court's, what this court has said about redressability, which essentially is, as we say in the salmon spawning, citing the salmon spawning case, that redressability review isn't toothless. There's got to be something that it may be a relatively low bar, but in a case where there isn't going to be any relief different than what was being pursued. So you take a look at what was being pursued before the agency and what is it that they wanted. They wanted to reduce emissions through the application of technology. They wanted to try to abate. They knew these leases. They didn't say they're surface impacts and you shouldn't offer these leases. They said you should reduce greenhouse gases. The declarants are now saying they're going to be surface impacts. Their argument is that they didn't say enough. So I don't know what enough is, but you've got your complaint and you have your briefing. It all goes together in terms of assessing standing if you look at our standing cases and what we look at. So their focus may have been, as you correctly say, on the greenhouse gases. But if you look at the Wild Earth Guardians case and similar kinds of cases, simply because they don't need to allege that kind of surface to necessarily have also a claim that the record of decision is wrong. So they've alleged two different things. They may be wrong in the end. Maybe I don't know the relationship ultimately to the surface, but this is very close to the D.C. Circuit case on standing, is it not? We don't believe it is because of the redressability analysis. And that, if you read the excerpts of record that focus on what they said at the agency level, the focus was not there are surface impacts that haven't been assessed. The focus was what can be done. We believe you should be adding stipulations to leases that abate greenhouse gases. And so now the declarants come in and they say, well, I don't want to see an oil derrick from a distance when I'm hiking. Well, again, if the focus and what should be done as part of a more robust environmental analysis was to abate greenhouse gases through technology, all the surface impacts, the aesthetic concerns that they've expressed about hiking and about what would happen in terms of recreation, that development will have occurred. Their focus was how can greenhouse gases be reduced. That really goes, they've raised the issue, and deciding redressability can't turn into a merits decision if they've raised the allegations. And they say that they want, you know, they're concerned not only about the aesthetics, but they're also concerned about the greenhouse gases. I don't know why at the standing stage that's not enough, and they may fall flat on their face on the merits in the end in terms of actually winning. But it seems to me they made the allegation in the district court, even though it certainly wasn't robust, I'll grant you that. Well, and if the proffered alternative before the agency, when they were trying to say to the agency, this is what you should do, you should do an EIS instead of an EA, and you should consider alternatives so you can put stipulations on these leases that would abate greenhouse gases. The point is, is that now they're coming, they've changed their theory altogether in terms of standing, and now they're saying two people believe that there would be surface impacts associated with this. And the argument is the relief they were seeking at the agency level. But are they stuck with what they were seeking before? It's what they wanted to pursue as part of the alternatives. Now they're coming in, in the district court, attacking a record of decision, correct? That's correct. And what case says, when you decide you want to attack a record of decision, that you're stuck with the theory that you also talked to the people about in the administrative action? I don't know of a case on that point. I can simply say that it's... They come in that wasn't even in the administrative proceedings and challenged the procedural EIS process. And so if they're not stuck with what they argued there, and they did argue it in the district court, why wouldn't we either decide standing or send it back, as the BLM says, to the district court and let the district court figure it out on this theory? And the answer is that they started this seven years ago. They got a remand after litigation was initiated in 2008 because the government agreed to do climate impact reports. Then they initiated this litigation in 2010, and they didn't assert before the agency that the surface analysis was inadequate. They just told me that there's no case that said they would have had to do that. Well, what I'm trying to say is, throughout this whole process... My question is, what does it matter? It is highly frustrating. I totally understand that, and it might be even unfair. But from a legal perspective, what impact? And the argument that we would make is that they have said to the agency what they'd like the agency to do differently. Could they broaden it? Yes. But the reality is this is what they say should have been done in the first instance because their concern was not about surface impacts. It was about abating greenhouse gases. And if they're now saying there are surface impacts because of aesthetics when their relief has been to try to reduce greenhouse gases, not eliminate the leasing, it's inconsistent. We don't think they're going to be able to get redressability. So you're invading your co-counsel's time. I am, Your Honor. I will yield. And I will simply say in closing that if the court is to adopt their rule, it would allow a party like this to litigate climate change merely by asserting that there are surface impacts in order to achieve standing, which is inconsistent with Bellin and Amigas-Bravos. Good morning, Your Honors. Nicholas Demasio on behalf of the U.S. Bureau of Land Management, and may it please the Court. As the Court is aware from our brief in light of the D.C. Circuit's decision in the Wild Earth Guardians case, we do not contend that the plaintiffs need to allege a climate change-related injury in order to have standing here. So you and your co-party have a divergence of interest on this particular issue? Is that fair to say? On that legal issue, we believe the Wild Earth Guardians case does get the analysis right on that narrow legal issue. However, there remain, as Your Honors were indicated at the outset of this argument, there remain substantial factual questions concerning the plaintiff's standing, as well as the potential mootness of their claims with respect to many of the lease parcels at issue here. And that is because plaintiffs here sought to void or enjoin, and I'm quoting from the complaint, they sought to void or enjoin 166 separate oil and gas leases that were offered by six BLM field offices and spread across 23 separate counties in the state of Montana. And we do not believe that the plaintiffs have established standing to seek all of that relief because they alleged injuries from the surface development of lease parcels at only a few of the lease parcels at issue. Did you make that argument in the District Court? No, Your Honor. We didn't. And to be honest, we think all of the parties here were more focused on the climate change-related injuries at that stage of the proceedings. However, the court, as Your Honors will know, has an independent duty to scrutinize standing and ensure that there is jurisdiction. And so we're raising that issue now. I understand that, but what I'm really getting at is it seems like a very complex process to try to sort all this out. Don't you think it's better to give the District Court the first crack at that? Well, yes, Your Honor. In fact, that's precisely the relief that we asked for here was simply for this court to remand for the District Court to conduct further factual analysis of standing and mootness in light of the correct standard. We think that that's the best way forward under the procedural circumstances here where the plaintiffs specifically alleged for the vast majority of these leases, the plaintiffs did not allege any injuries from surface impacts. And as the Supreme Court stated in Summers and this court reconfirmed in Wilderness Society v. Wray, in order to challenge a particular agency action, you need to allege imminent plans to use the area affected, not just an area roughly in the vicinity of the area affected here. And so, for example, the plaintiffs lack standing with respect to all those leases where they didn't allege surface impacts. I'll give you one example of that, which is that as to the lease suspensions that were lifted by the Billings and Malta field offices, the plaintiffs didn't identify any lease parcels that they specifically used, nor did they allege any imminent plans to visit. But they wouldn't have to use it if they're close enough to view it. Sure, I'm not trying to make the argument that they need to actually physically stand on the parcel. I just mean they didn't allege any lease parcels that they use or view or have any plans to visit. And in addition, their challenge to many of these lease parcels has now become moot  or later terminated due to nonpayment of royalties. Could those be re-whatever, you know, reinstated? Not without another decision, a formal decision by the BLM to offer them. Are you suggesting that rather than, because that's factual and legal, that I think both you and the Center say that issue should go back to the district court. Is that right? The witness issue, I think, is properly addressed by the district court on remand. And since the district court is going to have to dig into those facts concerning which leases remain live and where these folks say they were recreating. When you say it's become moot, it's because the parcel was not sold, it could not possibly give rise to any injury. Is that the reason, something like that? Yes, that's correct, Your Honor. Counsel, what's your response to your opposing counsel's point that as a matter of law, we can make this standing determination right in this case at the appellate level? Well, I think you could scrutinize the affidavits or the declarations that the plaintiffs put into the record and make some of these factual determinations at this time. But keep in mind that these declarations were filed over four years ago. And so subsequent events may have mooted out those claims. And part of what we're saying here is if the district court is going to have to dig into the questions of mootness in terms of the specificity, in terms of where these folks are recreating and whether the lease parcels are still active or not, then it would be more efficient and helpful to this court to have the district court do that factual analysis in the first instance. What if, if I understand it, you're basically saying that for the specific parcels listed at least in the Gilbert and Werner declarations, that there's the possibility of standing because of the allegations in there. Is that right? There's the possibility, yes, if they were specific enough. What if we were to say they're standing subject to mootness? In other words, I think what you're saying is, yes, they're standing as to this universe, but some of them might need to come out, in your view, because they're moot. Or is that kind of oversimplified? Yes, that's part of what I'm trying to explain. But in addition, I think if you're going to go that far, if you are going to go to the extent of scrutinizing these declarations for standing facts, then you should also consider holding explicitly that the plaintiffs lack standing for all those lease parcels at which they did not allege surface-based injuries, given that they've now abandoned their climate change injury theory. And that is the vast, vast majority of the leases at issue in this case. So do you have a view on their view that we should, whether we or the district court, should look at this by district office ROD or by individual lease parcel? We think the correct analysis is to look at this by individual lease parcel because what they're alleging is an injury from the surface impacts of development at individual lease parcels. And they specifically asked in their complaint to void or enjoin all of the lease parcels that were offered by BLM as part of the sale. And as the Supreme Court made clear, in order to seek that type of injunctive relief, a plaintiff needs to allege a concrete injury, in fact, from the specific action that they're seeking to void or enjoin, to set aside. So you would basically, in your view, would have us just remand it and say, the greenhouse gas issue is out. They're only alleging injury based on surface impact. And the district court should determine whether they're standing and whether some of the leases claims are moved. Right. Whether they, with sufficient specificity, allege surface impacts at any individual lease parcels and whether any subsequent intervening events have caused their challenge to those particular lease parcels to go moot, for example, because the lease is no longer active, it's been terminated due to nonpayment of royalties or something of that nature. Those questions shouldn't be foreclosed from argument on remand. You can decide the narrow legal issue that the plaintiffs are raising in their opening brief here, but just leave those additional factual assertions. Thank you, Counsel. Mr. Hernandez, you have a little bit of reserve time. Okay, yes. Thank you, Your Honors. I'd like to make five fast points. With respect to the- Fifty-one seconds. The authority that Mr. Mercer cited to support his position that surface impacts can't support climate arguments, he cited only two cases, Bellin and the Semigos-Bravos case. Neither case addressed whether a standing could be based on surface impacts. It's noteworthy that Judge Smith, who wrote the majority opinion in Bellin, in his concurrence to the decision to deny a rehearing on Bonk, said that that decision did not foreclose arguments for standing for private litigants to challenge climate change-related actions, and he cited a NEPA case. I can't draw it off the top of my head at the moment, but he left that door open. With respect to whether or not we allege any claims about surface impacts, I'll direct the Court to ER 317 and 340, where we talk about the surface impacts of the challenged leases. And on page 340, we ask the Court for redress to avoid the challenged agency actions, which is precisely the redress requested in Wild Earth Guardians v. Jewell. Counsel, what about Mr. Damasio's last point about how there could very well be standing with respect to certain parcels but not others? Where do you and he disagree on that? I think the disagreement is with respect to what the challenged agency action is, it appears. The actions that we're challenging are the final agency actions are the decision records. And I haven't found a direct Ninth Circuit case on it, but the Tenth Circuit has said that to have standing to challenge a record of decision by an agency, the plaintiff need not show that he has traversed every square inch of area affected by that decision. Just one portion is enough. And for these specific decisions, the fact that our client's members have traversed portions of them is enough to challenge that action. When it gets to the ultimate remedy phase, if we were to go that far, the Court certainly would carve out an appropriate remedy that would be limited to the actual injury. But that doesn't mean that we can't get in the door. And finally, with respect to mootness, the BLM has raised this issue. I just want to clearly point the Court to Friends of the Earth v. Laidlaw, where the Supreme Court said that courts should carefully distinguish between standing, which is established at the time the complaint is filed, and mootness, which is about subsequent actions that may affect whether or not there is a live controversy. For standing, plaintiffs have the burden. For mootness, the burden shifts to the defendants. It's a heavy burden. It hasn't been met here. It could be addressed at the District Court. We agree with that. If the Court has no further questions, I'll thank you for your time. No further questions. Thank you, Counsel. Thank you, Counsel, for both sides for a very helpful argument. That case will be submitted. The last case for discussion today is United States v. Caldwell.
judges: O'scannlain, Tashima, McKeown